Irving P. CHELLY, Plaintiff,

v.

The HOME INSURANCE COMPANY, a New York corporation, Defendant.

Superior Court of Delaware, New Castle.

Dec. 17, 1971.

Richard P. Beck, Morris, James, Hitchens & Williams, Wilmington, for plaintiff.

B. Wilson Redfearn, Tybout, Redfearn & Schnee, Wilmington, for defendant.

## OPINION

O'HARA, Judge.

This is a proceeding for the recovery of proceeds claimed to be due plaintiff, under a policy of insurance against accidental injury. Both parties have moved for summary judgment on the pleadings.

The policy in force at the time of the incident which initiated this litigation was issued to the Board of Public Education in Wilmington, Delaware, by the defendant, The Home Insurance Company. The Board had employed plaintiff as its director of Adult and Vocational Education since 1965. The plaintiff's name appears on the list of persons who were covered by the policy under the 24 hour endorsement. The policy in pertinent part reads as follows:

> ". . . The company does hereby agree to make payments herein provided in accordance with and subject to the provisions and conditions of this policy when any covered person as . described herein shall incur loss resulting from *bodily injury caused directly by accident independent of all other causes,* sustained while this policy is in force . . ." (Emphasis added).

No Delaware court has heretofore been called upon to construe the exact language used in the aforementioned policy.

The facts indicate that plaintiff initially experienced back pain while releasing his bowling ball in the third game of a recreational match. As a result of this pain, plaintiff discontinued playing immediately and later required the assistance of his teammates to change into his street clothes and reach his car. The next morning plaintiff was driven to the hospital by his wife. According to the testimony of his physician, his pain was then so severe that he was unable to get out of the car unassisted and he was admitted to the hospital as an emergency case. Plaintiff's discomfort was diagnosed as a herniated lumbar disc or "slipped disc". As a result of this injury, plaintiff was hospitalized for 18 days in February, 1968, and continued under his physician's care for several months thereafter, thus incurring medical expenses totaling $1,753.22 for which he seeks judgment.

Plaintiff urges that the policy language, "bodily injury caused directly by accident" should be construed so as to sustain coverage. Defendant relies upon prior Delaware cases involving similar language which have drawn the distinction between an accidental injury and injury caused by accidental means. Metropolitan Life Ins. Co. v. Landsman, 5 W.W.Harr. 384, 165 A. 563 (Del.Super.Ct.1933); Szymanska v. Equitable Life Ins. Co., 7 W.W.Harr. 272, 183 A. 309 (Del.Super.Ct.1936). It is the defendant's contention that under the authority of these cases the occurrence of a "slipped disc" is not within the scope or contemplation of the plaintiff's policy. It is argued by defendant that while the occurrence of the "slipped disc" may be an accident in the general sense of being an unlooked for mishap yet by accepted insurance usage it is not, unless preceded by unexpected events or responses which might be termed accidental causes, e. g., a precipitating fall on the lanes.

The distinction asserted by defendant was first adopted by the Supreme Court in United States Mut. Acc. Ass'n. v. Barry, 131 U.S. 100, 9 S.Ct. 755, 33 L.Ed. 60 (1889). This decision, while instructive, is not binding upon the state courts.

Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). In *Barry* the insured jumped from a platform a short distance to the ground where the manner of his landing caused internal hemorrhaging and resulting death. The beneficiary of the deceased insured sought recovery on an accident policy which extended benefits under circumstances wherein the insured, "shall have sustained bodily injuries effected through external, violent, and accidental means . . .". In affirming the jury instructions given by the lower court, the Supreme Court of the United States attempted to clarify the difference between accidental means and accidental results as follows:

> "The court properly instructed . . . that the question was whether there was anything accidental, unforeseen, involuntary, unexpected, in the act of jumping, from the time the deceased left the platform until he alighted upon the ground; that the term 'accidental' was used in the policy in its ordinary, popular sense, as meaning 'happening by chance, unexpectedly taking place, not according to the usual course of things, or not as expected;' that if a result is such as follows from ordinary means, voluntarily employed, in a not unusual or unexpected way, it cannot be called a result effected by accidental means; but that if, in the act which precedes the injury, something unforeseen, unexpected, unusual, occurs which produces the injury, then the injury has resulted from accidental means."

Both the *Landsman*\* and *Szymanska*\*\* cases adopted the differentiation noted above between the resulting injury to the insured and the means which is the operative cause in producing the result. Plaintiff, however, argues that the deviation in the instant contract language from the standard form discussed in the early Delaware decisions is material, and that this, buttressed by a public policy favoring the insured, compels this Court to accept plaintiff's broader interpretation.

■ This Court acknowledges that the construction of insurance policy language is not ordinarily controlled by the standards applicable to a contract negotiated at arms length between two parties on the same level. The form and the language of such agreements are usually prepared by the insurer in advance, and the insured must accept it in that form. Moreover because of the disparity in knowledge between the insured and the insurer concerning insurance matters, the policyholder must justifiably place heavy reliance upon the knowledge and good faith of the company and its representatives. In order that these reasonable expectations of the policyholder might be fulfilled, the courts have molded their interpretive principles accordingly and adhered to a liberal construction of policy language in favor of the insured. Thus it has been stated that where the provisions of a policy of insurance are reasonably susceptible of two constructions consistent with the object of the obligation, one favorable to the insured, and the other favorable to the insurer, the former will be adopted. 43 Am.Jur.2d 271; Allen v. Metropolitan Life Ins. Co., 44 N.J. 294, 208 A. 2d 638 (1965); Metropolitan Life Insurance Co. v. Landsman, supra; Linden Motor Freight Co., Inc. v. Travelers Ins. Co., 40 N.J. 511, 193 A.2d 217 (1963).

■ A review of the language of the instant insurance agreement admits of only one interpretation. The technical language "by accidental means" construed in prior Delaware decisions clearly refers to the operative cause of an accident. Metropolitan Life Insurance Co. v. Landsman, supra; 12 A.L.R.2d 1264; Bjorklund v. Continental Casualty Co., 161 Wash. 340, 297 P. 155 (1931); Pope v. Business Men's Assur. Co. of America, 235 Mo.App. 263, 131 S.W.2d 887 (St. Louis Ct. of Appeals

---

\* Pertinent clause reads, "caused directly and independently of all other causes by violent and accidental means".

\*\* Similar language.

813

1939). This term as commonly understood and judicially construed is equivalent to the language in an insurance contract, "caused by accident". Thomason v. United States Fidelity & Guaranty Co., 348 F.2d 417 (5 Cir. 1957). The natural import and plain meaning of the instant language, "bodily injury caused directly by accident, independent of all other causes . . ." is a reference to the operative means through which an accident in the more general sense occurs.

Finally, plaintiff relying upon Beckham v. Travelers Insurance Company, 424 Pa. 107, 225 A.2d 532 (1967), suggest that this Court depart from its earlier rulings and abandon the distinction between "accidental means" and "accidental results" in construing insurance contracts. It is stated that the distinction is unworkable and that the modern trend of authority has rejected it. Scott v. New Empire Insurance Company, 75 N.M. 81, 400 P.2d 953 (1965); 166 A. L.R. 469. No doubt this criticism has some merit, and a rule such as expounded by Judge Cardozo in his dissenting opinion in Landress v. Phoenix Mut. Life Ins. Co., 291 U.S. 491, 54 S.Ct. 461, 78 L.Ed. 934 (1934) would avoid many difficult inquiries in that every unforeseeable mishap would be ipso facto covered. However, the distinction is well settled in Delaware and has been expressly approved on numerous occasions by the Supreme Court. Prudential Insurance Co. of America v. Gutowski, 10 Terry 233, 113 A.2d 579 (Del.Supr.Ct.1955); Koester v. Mutual Life Ins. Co. of New York, 6 W.W.Harr. 537, 179 A. 327 (Del.Supr.Ct.1934); Fulnettle v. North American Mut. Ins. Co., 4 Terry 505, 50 A.2d 614 (Del.Super.Ct. 1946).

For the reasons herein set forth, the Court concludes that plaintiff's injury was not covered by the insurance policy involved and, therefore, plaintiff's motion for summary judgment should be denied and defendant's motion for summary judgment should be granted.

It is so ordered.